Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, the Full Commission modifies and adopts the Decision and Order of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Tort Claim Act.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. This action was filed with the Commission pursuant to the provisions of the North Carolina Tort Claims Act, N.C. Gen. Stat.143-291 et seq., against the North Carolina Department of Correction, which is a department of the State of North Carolina.
4. Defendant filed an Answer with the Commission denying all allegations of negligence.
5. Plaintiff was an inmate of the North Carolina Department of Correction assigned to Craggy Correctional Institution on 9 March 1994.
6. The incidents giving rise to this claim occurred on 9 March 1994 at Craggy Correctional Institution.
***********
Based upon all of the competent and admissible evidence adduced from the record, and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On 8 March 1994, while incarcerated at Craggy Correctional Institution in Buncombe County, North Carolina, plaintiff stabbed another inmate. Plaintiff claimed that he heard voices instructing him to do so. Plaintiff was placed in the Segregation Unit as punishment.
2. While in the Segregation Unit, plaintiff heard voices which instructed him to punish himself for stabbing the inmate. Plaintiff mixed a solution of battery acid and surgical scrub, and at approximately 6:00 p.m. on 9 March 1994, he intentionally and deliberately placed the solution into his eyes.
3. Plaintiffs eyes began to burn and he felt the solution leaking down his throat. Plaintiff believed he might have poisoned himself, so he placed a note on the shelf outside of his cell to inform the guard that he had placed the solution in his eyes. The guards periodically walked through the Segregation Unit to check on the inmates.
4. After five to ten minutes, Officer Rick Payne picked up the note and immediately reported it to the officer in charge. The officer in charge, Lt. Lewis Davis, was contacted and ordered plaintiff to be brought to his office. Two officers shackled plaintiff and took plaintiff, the battery, and the remaining solution to Lt. Davis. Lt. Davis telephoned Nurse Eddie Lynn Dalton for treatment instructions.
5. The undersigned note that there are no entries in the shift log nor are there any other contemporaneous written records of the incident provided for review by the Full Commission. Either there were no records made of the incident at the time despite standard practice requiring the same, or they were subsequently misplaced. Approximately two years after the incident, and two years before the hearing before the Deputy Commissioner, Officer Joseph Stewart and Lt. Lewis Davis provided written statements of their recollections of events of 9 March 1994. These statements are in direct conflict with the testimony offered by these men at the hearing before the Deputy Commissioner. The undersigned find that the testimony given at the hearing before the Deputy Commissioner by Officer Joseph Stewart and Lt. Lewis Davis is not credible, and where conflicts exist, greater weight is given to the written statements prepared by the witnesses.
6. Nurse Dalton was unable to remember receiving the telephone call, and was only able to relate what instructions he would have given under like circumstances. According to the statements of the officers, they were instructed to flush out plaintiffs eyes with water for 10 to 15 minutes.
7. Officers Payne and Stewart took plaintiff to the showers and washed his eyes for approximately ten minutes until plaintiff said that they no longer burned. Plaintiff was returned to his cell to wait until the next morning for medical attention. He received no further treatment for approximately 16 hours.
8. The next morning at or around 8:30 a.m., approximately one-half hour after the nurse assigned that morning (Joanne Worley, R.N.) had arrived, she was notified that plaintiff had something in his eyes. She examined plaintiff and found that his eyes were extremely red and watery. Nurse Worley made arrangements for plaintiff to immediately be transported to Urgent Care.
9. Plaintiff was subsequently treated on numerous occasions by numerous health care providers, including at least two rejected corneal transplants in his left eye. Plaintiffs right eye has returned to near-normal vision.
10. Plaintiffs treating physician and expert witness, Dr. Craig Fowler, testified that immediate flushing of the eyes was the appropriate protocol and treatment, although he was unable to state whether the flushing plaintiff received was sufficient. He stated that the preferred treatment would have been to flush plaintiffs eyes for approximately an hour, followed by immediate transport to emergency medical care. However, Dr. Fowler was unable to state with any medical certainty whether or not the damage was already done to plaintiffs eyes by the time the officers attempted the irrigation.
11. The undersigned find that defendants acted negligently in the care of plaintiff in that they did not irrigate plaintiffs eyes sufficiently and failed to obtain medical care for plaintiff following the irrigation. However, plaintiffs injuries were self-inflicted, and there is insufficient medical evidence to establish that defendants negligence was the proximate cause of the ultimate damage done to plaintiffs eyes.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Recovery against a State agency must be based upon actionable negligence on the part of its employee while acting in the scope of his employment. N.C. Gen. Stat. 143-291 et seq. (1996); Wirthv. Bracey, 282 N.C. 505, 128 S.E.2d 810 (1963).
2. Lt. Lewis Davis, Nurse Lynn Dalton and the North Carolina Department of Correction were negligent in the discharge of their duties regarding the events pertinent to plaintiffs claims in that they did not irrigate plaintiffs eyes sufficiently and they failed to obtain further medical care following the irrigation; however, the negligence of defendants has not been shown to be the proximate cause of plaintiffs injuries. Therefore, plaintiff is not eligible to recover under the Act. N.C. Gen. Stat. 143-291;Register v. Administrative Office of Courts, 70 N.C. App. 763,321 S.E.2d 24 (1984).
3. The plaintiffs intentional actions as reflected in the record bar him from recovery on his claims. N.C. Gen. Stat. 143-291; Huffv. Northampton County Bd. of Educ., 259 N.C. 75, 130 S.E.2d 26
(1963).
***********
Based on the forgoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiffs claim must be, and the same is, DENIED.
2. Each side shall bear its own costs.
This the day of January, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
Chairman Bunn participated in the hearing of this case, but retired prior to rendering the decision.
S/_________________ J. HOWARD BUNN, JR. CHAIRMAN